Our next case is 5-23-0560, if the attorneys are present, you may come up. I'm going to try my best and pronounce these names correctly. It's Veseli v. Jusufi. Veseli. Veseli. And Jusufi. Jusufi, thank you. If the appellant is ready, you may approach and begin. If it is correct, I'm Paul Marks. I'm one of the lawyers for Valiant Jusufi, who's with us today. And I'll use first names today for clarity purposes, not out of disrespect. We all have a mistake. Frank Jusufi is a co-appellant. Mr. Ed McCarthy represents him. I will be doing the argument for both. Of course, they are not principal and agent. They are father and son. Counsel for Ali Veseli. I'll refer to him as Ali. That's the same thing to tell him. So we're here today because Ali sat out seven years of litigation. He started this case in 2020 after my client settled prior litigation by buying the property. The latches defense has been rejected, so we find ourselves here today to discuss outdated leases. When your client bought the property. He did in 2019. He knew that Veseli was running the restaurant, didn't he? He did. Okay. Subject to a 30-day termination lease, the 2013 instrument, which was what was assigned to him. When was Veseli's lease terminated, assuming that it ever even was? By non-performance and by invalidation via the Conveyances Act. The Conveyances Act upon purchase of Valin because Ali's sublease is unrecorded as a matter of law. Under the Conveyances Act, it is invalid and to a subsequent purchaser is of no effect. Is that argued at the trial court? Yes, sir. At both the 2022 August setting and at the November 22 setting as well. There was nothing in the court's written order that referenced that argument that even talked about it, right? I think that's correct, sir. You can look at Appendix 707. That's from the August setting and Appendix 760, the November setting. That's what I argued. Okay. Please keep that 707 for August and what was the November? 760, Appendix. 60? 760, sir. Thank you. You're welcome. So a sublease cannot exist without a valid prime lease. It's a different principle. That's sometimes called a top lease. So that occurs because the sublease draws from the lease. Nothing unremarkable. A subtenant draws from tenant rights. The other principle, which Judge McKinney just mentioned a moment ago, so we have an unrecorded sublease, and today we'll refer to that as the out-lease sublease of 2011. That or a similar unrecorded instrument is void to a subsequent purchaser. It advances that at 735 ILCS 5-30. Also, that out-lease sublease wasn't performed after the fire in 2012. Ali stopped paying on it. More on that in a moment. So. Stopped paying who? Stopped paying Frank. So Frank had the – let's talk about the instruments for a moment here and I'll explain. Frank had the 2010 lease. He had actually been in the property since 2004. The 2010 lease occurred. Then the property was subleased to Ali in 2011. I'm going to skip over all the instruments from 2012, but then the litigation got started between the Figueroa Trust, the owner of the property, in January of 2013. And in February, that's when Ali signs up the 2013 lease, which has a month-to-month termination provision. That's the lease that gets assigned development when he buys the property in 2019. That's the lease, that 2013 lease, that got paid upon by Ali Vaseli to the Figueroa Trust instead of the Ali sublease from 2011. That subtenant ignored the payments under Frank's sublease with him and instead paid the Figueroa Trust. Now, please don't confuse the Figueroa Trust with the real estate rent money. That's the Goldenberg Heller client trust fund account. There's some money there. It was about $28,000 when we terminated the trial court proceedings. Now it's gone because Ali continues to deposit into it. That money's still there, and I'll talk about that at the end. I want to talk briefly about what happened when Fallon took over the property at the end of 2019. Please keep in mind, we're here today to talk about possession. The ownership has already been decided in this case and not appealed. That ownership is clearly with my client, Fallon Yusufi. So let's talk about what happens between Fallon and Ali when Fallon starts to own the property. A 30-day notice to vacate is sent to Ali in December of 2019. That's stipulated trial exhibit number 18. A five-day notice of rent increasing to $6,000 a month from the $3,300 a month is sent in February of 2020. That's stipulated trial exhibit 20. An evasion complaint gets filed at this case in March of 2020. And then the rent goes up again by a 30-day notice, increasing the rent to $9,000 in April of 2022. That's stipulated trial exhibit 23. Ali had made a filing in the trial court in August of 2021, seeking input or control over the vacant unit in the building. That's at record C-907. Now, Fallon wanted to use that vacant unit. He asserted he was the owner. He was. But Ali claimed the right of ownership via this case. See appendix 609. So Fallon wanted to open a coffee shop for some gaming. Ali never occupied that extra unit. He just wanted control of the entire building. An example of the overreach that's going on in this case. Now back to law and equity. Two big points. The Ali sublease of 2011 would have not performed after 2012. There was a big fire that year. He stopped making payments. I'll talk about the testimony in a moment. Well, didn't his insurance pay for some of those restorations? Didn't he, in fact, spend his own money on some of those restorations? That's my understanding as well, Your Honor. I was involved in that case. Then how is that not performing? He didn't pay the rent. He didn't pay the rent to Frank under the sublease for almost 10 years before Fallon bought the property. Frank's lease was 2010, the 2010 Frank lease. When was it recorded? It was recorded in 2012. So for two years then it wasn't valid according to your argument. It was relied upon and performed upon, Your Honor, as a matter of law to a subsequent purchaser under the Conveyances Act. That's when it gets in. Okay. A sublease is an operative without a top lease. That's the Coleman v. Madison case cited in the brief. It's subject to a de novo standard review because here we don't have a top lease. It goes away in 2019 with a purchase by Fallon. So he can't have a valid sublease without a valid top lease. Under the contract for deed and eval when bought the property for, there's a provision in there that says, by the way, Frank's not a purchaser. He does guarantee that. There's a provision in there that says, Hey, Frank, the instrument that you recorded in 2012, which clouds the title to this property, will be released. Page three of the contract for deed. Now, in the motion to reconsider, I put in the record the actual release of that, but it's not particularly important because it's already in the existing record where it's going to be done, and that happened. Non-performance of the sublease since 2012. That's a mixed question of law and fact, and that alone should be enough for reversal under the manifest weight of the evidence standard for fact and a de novo standard for the matter of law. I say it's a mixed question. So here's what happens. 2022 said much evidence. The focus is on ownership. The possession is intertwined. He stopped paying Frank under the sublease under the 20, after the 2012 fire. That's an appendix 548 620 as well. All these guys testifies. She says the lease is a 2013 month, the month least between Ali and the truck. That's appendix 525. She also says that her dad did not pay Frank under after the fire. Let me stop you real quick. You just talked about manifest weight, right? All right. Didn't the trial court specifically find that credibility was in favor of Ali? I don't think so. Right in the order of November 16, 2022, court finds considering the witnesses credibility in favor of the plaintiff. Don't we have to give deference to that? In favor. I'm a bit confused by that language. We had the case brought by Ali and Sally, which was for possession. I'm sorry, which was for ownership. And then my case for the outstanding of the ownership. Right. And possession. Right. Okay. So the deference to this court is owed on that order. Please remember that order makes a finding that Val is the owner of the property. Correct. So I didn't really mean it. If that was true, but you just read your honor, then the court should rule for Ali. Not necessarily. I just don't understand the language of that particular language. All right. Go ahead. Ali says he stopped paying under the 2013 lease. That's appendix 586. Ali understood that the 2013 sublease was over, appendix 620. But the trial court ruled that the 2013 sublease is operative. And that's why we're here today, seeking reversal. I mentioned that between 2013 and the month of the month lease, which was assigned to Val when he bought the property, it effectively replaced prior instruments. That was the instrument that was acted upon. That's the instrument that was paid upon. It cannot be a placeholder as a matter of law, despite the trial court ruling that particular fact as a matter of law. I'm sorry. There must be a top lease to have a sublease. There isn't one. Now, reconsideration. There's plenty of law favoring Ali, Mark Klein, Val, and Yusufi's position based upon the hearing in August of 2022. The November proceeding was argument, not evidence. And after that, I filed a motion to reconsider to advise the trial court that you may have made a mistake as a matter of law, as described here today. The trial court decided not to take a look at that evidence. But as I said, it could have. It could have looked at it as this was a bench proceeding. It could have looked at it and taken it, given whenever it was due. It decided not to. But regardless, my position here today is that there's plenty of evidence even before that. And as a matter of law, that that sublease is not operative. And so if Valen kicks a plaintiff out of the restaurant, he gets $135,000 worth of furniture and fixtures. He can take them with him. He owns them. All right. So we ask here today for reversal. We ask here today that the amounts still in the Goldenberg-Heller Plaint Trust Fund account be addressed. That has not been addressed. And finally ordered by the trial court. Trial court made an initial ruling not all that money goes to Valen. That's at A743. But then there was some back and forth after that. Now, if the 2011 sublease is in effect, it all goes to Valen, as the landlord is only responsible for the foundation, walls, and roof. And under the 2013 lease, it's just not clear. The sublease is silent. So in any event, that money needs to be addressed, hopefully by this court under Rule 366, or back at the trial court under a remaining order. I see I'm out of time. I'll address a whole other range and other kind of background that's owed when I get back here. Okay, thank you. Do you have a final reply? Excuse me for my nerves, Your Honors. No. My name is Sandra Titoya, and I represent the appellee, Ali Viseli. This case, Paul has it right, it's about who has a superior right to possession of the property. Ali Viseli, the tenant who's been in possession of the property since January of 2011, who helped this family, has ran a successful restaurant from the property. Open, obvious, notorious. Everyone's been to the restaurant. Both Yusufis have been to the restaurant many times. They're very familiar with the property. They used to run the restaurant. So between Ali Viseli or Frank's son, Val and Yusufi, who purchased the property pursuant to a settlement agreement of a 2013 lawsuit, and he's now seeking to evict Viseli. Viseli's been the model tenant since 2011. He's paid rent, pays his bills, pays his vendors, pays the utilities. He has maintained the property. He has repaired the property, not just. Is that, I want to stop you there. Was that part of the lease, his sublease? Was he required? Yes. Okay, so. Yes, he was required to maintain and he was required to repair. And he did it out of his own pocket. He did it after the fire with his insurance. He put about $80,000 of repairs into it as well to redesign the kitchen to a usable kitchen for him. What's your response to your opponent's argument that, first of all, did Ali ever record his lease? He didn't record his lease, no. And most people don't record their leases. I mean, to be quite honest, while that would have put people on notice that he has a recorded lease, Val and Frank both were well aware that he had a lease. Frank, of course, was aware of the doubt of Val's father because he entered into the sublease with him. Obviously, they all knew he was running the restaurant. They are. They're father and son. They're co-conspirators. They're partners. Your Honors, they've done. One doesn't say boo without the other. So is the law that if you don't record a sublease, it's invalid? That is not the law. No, that is not the law. That was my question. Yeah, you're exactly right. Because that's what he's arguing, right? Yeah, and that is not the law. I think he was trying to argue notice. But there's other ways of notice. There's Ali being in possession of the property. There is the fact that he was a party, Val and Yusuf, he was a party to the 2013 lawsuit. And Ali Vesely's sublease came up many times and through many pleadings throughout that stage. So he was well aware of the sublease. What they did, so we have the 2010 Frank lease. And I want to discuss the facts a little more because this is such a fact and document specific case. And that is why the manifest way to the evidence standard does apply because the judge did consider all these facts. And if you saw his findings, then you saw all of his findings of fact. And that's why he denied the eviction order. But the 2010 Frank lease, that was actually negotiated with the trust for 20 years. So it was a 10-year lease. And it ran from December 8th through December 9th of 2010 with an unconditional option to renew. Unconditional. And that was handwritten in. Because Frank did that and he stated that in a deposition which has been submitted in the record. Because he's in the background negotiating a long-term lease and the sale of his equipment and restaurant to Ali Vesely. Ali wanted a 20-year lease. And he was paying $135,000, and Frank admitted this also, for not just the furniture, equipment, and fixtures, but also for the promise of a 20-year lease, which he did get. So Frank negotiates the 2010 lease with the trust for 20 years, which would end and expire December 9th of 2030. It would expire eight, nine days, my math is right, before Ali Vesely's sublease was going to expire. So the terms were in line with each other. So we have a prime lease and we have a sublease under there. Frank's 2010 lease, there was no term in there that did not allow him to sign it. So the law is if there's nothing there that says you can't assign it, you can assign it. And the trust knew that Ali was renting it. Ali was there during the renovations of the property and controlled some of the renovations of the property. So you have the 2010 lease. You have the 2011 Vesely sublease. The 2011 Vesely sublease, there was a fire. There's a clause in the sublease that says that either party can terminate it with 60 days written notice to the other party. That never happened. The sublease continued. Ali made the repairs. Ali stayed in possession. Now, Mr. Marks skipped over what happened in 2012, but it's important to this. In 2012, Frank Yusufi, on behalf of his son Valen, who's in college at the time, negotiated another lease with the trust for the same property, except it was going to include the third unit. He wanted to put Valen's son's name on it to build up his credit. So they signed another lease that includes all three units, and it gives them the right of first refusal. This is while the fire, while they're restoring the property, this is what happened. During that same period of time, the trust approaches Ali and offers to sell him the property. So they turn to an offer to purchase that's conditioned on Valen not exercising his right of first refusal. The trust gives Valen notice. Hey, I have a buyer. Are you going to exercise, are you going to buy the property at $600,000? Valen doesn't respond. So the trust tries to move forward. Frank records his 2010 lease, the prime lease, the prime lease that gives Ali Vaseli the rights under the 2011 sublease. Litigation ensues. 2013, it goes on for until 2019. Ali's never made a pardon to this. Unbeknownst to him, he doesn't know they're trying to negotiate and conspire his rights away to be able to possess this property. After that lawsuit settles, which ended up with Valen purchasing it, Frank guaranteeing it and also being the financial backing for it. Does that terminate? When does counsel argue that there's got to be a top lease for the sublease to exist? Right. When does the top lease stop existing? The 2010? Yes. It's the Frank lease. It hasn't. It hasn't stopped existing. Because his rights, even though his rights merged with basically as an owner, and I do kind of group them together, the use of his father and son. It merged into ownership. So an owner can be a leaser of the same property? Well, his rights merge. So the law, a tenant can't surrender his rights and conspire to the detriment of his subtenant. So what they're trying to do is they came up with a plan. And it was creative. We're going to buy the property. That's going to terminate our lease. Now we get to terminate the sublease because we can make more money. And that's really what the motive is here. They know that they can make more money with another tenant and another lease. They're trying to get out of a bad deal. Because Ollie's paying good rent. He's paying cheap rent. That's their main complaint. They try to raise it on him. He can stay there and lose it. As a subleaser, how is he able to stop the owner of the property from making a better deal for themselves? Because he has a long-term lease. If the sublease survives? Correct. If the sublease survives. So is the main question here whether the sublease, I mean, whether the top lease, when and if the top lease is ceased to exist? That... Do you agree that there cannot be a sublease if there's no top lease? I do agree. Except for the fact that the top lease has to either terminate by its own terms or be terminated. Okay? If it was terminated. Frank, it would be disingenuous and against public policy for Frank to say, Well, I'm the owner now. Now I'm canceling my lease under which you have your lease. And I'm going to trample over your rights as a subtenant because of what I've done. But remember what his intention was by operation of law when he buys the subject property as a leasee. He buys the property he's leasing. He's now the owner. Can't he be the owner and a leasee? Well, he can't be a lessee. But I think he takes subject then to the rights of the 2011 sublease as a subsequent purchaser. And they do. I agree with your argument that everybody knew the sublease was in place. But by operation of law, again, there's nothing. Your argument is by operation of law, the sublease doesn't drop off. It is that just because his rights merged. Yeah, just because his rights merged from being a lessee. More than the fact that he didn't record it. Right, because he knew what he was doing. The public policy is we can't allow someone to try to, I guess, circumvent the rights, avoid his obligations by buying the property. Because if he was a purchaser, he's still taking subject to that sublease because he had notice of it. It really is a public policy. As a buyer, does he take it subject to the sublease or subject to the lease? In Frank's situation, I think he took it subject to the sublease. Because he was the tenant under the top lease. And, again, to be able to surrender your rights under the prime lease to the detriment of your subtenant, it can't be tolerated by this court. And the motivation behind it is, well, I can get double what I'm getting with having a new tenant and a new lease. Have you cited any authority with regard to that? I have not. Are you aware of any case law or other? I'm aware of the case law. I couldn't find any Illinois case law. I found other states that says exactly what I'm saying. That a tenant under a prime lease cannot be allowed to surrender the lease premises. If him purchasing it, he's surrendering his lease premises, then he's not allowed to do that under these other states. Arizona, Pennsylvania, Arkansas, West Virginia, I've all found. And you can't do that to defeat the rights of the subtenant. And that's exactly what Frank's doing here. It's, I'll buy the property. I'm going to buy the property for my son so that I can now get out from underneath this bad deal. I'm going to defeat your rights by doing this. And it's just something that if it's not Illinois law, it's law in other states. And it's something that public policy shouldn't allow to be tolerated. I know that there's mention in the briefs about this idea that father and son are agents to each other and so forth and so on. I mean, how did the trial court resolve that issue? The trial court found that they were basically agents, had acted as agents for each other basically during this entire time. So from 2012, when they did the Valen lease, throughout that lawsuit, and then also as they're conducting themselves here. Does the family operate this restaurant together? Ali Vaseli and his family, yes, operate, and they have several employees. He has, like I said, he has always paid rent. He, the court acknowledged that he's basically been the model tenant. The only problem is that he's a cheap tenant. You know, he only pays 30, the max that he'll pay under this lease, the 2011 lease that they want to have terminated or are claiming is terminated, I think it's $3,400. And they've already testified, they submitted affidavits that they have other tenants in the background that want to rent it for over $6,000. And they tried to increase the rent. But the eviction, the eviction was brought on terminating a 2013 month-to-month lease. And not the 2011 lease, I'm sorry. What kind of restaurant is it? It's a family restaurant. It's called the Round Table. They serve kind of everything. It's kind of like a, what is it called, an apple, red apple type restaurant. So they serve a little bit of everything. Sorry, forgive me. You have until the red light goes on. Don't worry about that flashing yellow light. It's been 10 years since I've been here. I couldn't remember. I apologize. So, I apologize. I've lost my place. The yellow light indicates one minute or two. One minute, yes. So, Your Honor, they were terminating a 2013 lease. There's nothing that ever terminated the 2011 sub-lease. And that's the position. That's what the court found. And the CR review is manifest way of the evidence. It's not de novo. The case law is very clear, and I cited it, that in determining whether the trial court owed and entering an eviction order, it's manifest way of the evidence. The court considered motivation. The court considered the documents. The court considered the history of the parties. And the court found that they needed to terminate the 2011 sub-lease and that there was never any termination of that 2011 sub-lease. And the court said, Ali gets to stay. So, your position is your client gets to stay until that time in 2030? Until the time in 2030, which was negotiated and he paid for in 2011.  Thank you, Your Honor. Thank you. Mr. Mark, do you have five minutes in reply? Thank you, Your Honor. Justice Barbera, you hit on it. The 2019 purchase, no later than that, that sub-lease was invalid. I tried to introduce further evidence at reconsideration that Frank tried to end that lease in 2014. That was not taken up by the trial court. Just because we have what Mr. Tony described as a model tenant doesn't mean that he has legal rights. If he was a model tenant, he would have followed the obligation to get out of the property. He's a holdover tenant. The 2012 events, I skipped over because there's so much to talk about in this case. I wasn't trying to hide anything. So, if the court has any questions on this, let me know. In this case, Frank and Valen are not each other's agents. I realize that finding was made by the trial court. If you remember, they've had different counsel this entire time. And the summary judgment indicated that Valen was of legal age in 2012. He was at least 18 years old. And there was no POA in effect that Frank had over Valen. So, it's our position that they are different parties. And furthermore, the blending of privity in this matter, as well as with all the other parties by Ali Vassalli's counsel, should not be overlooked. Privity is important. I wanted to talk about rent that Valen thinks he's owed and then the possibility of holdover rent. So, Valen's going to take the position that he's entitled to monthly rent of $3,300 in January and February of 2020. That's about the time that the notice went out to leave or increase the rent. And then $6,000 from March of 2020 through May of 2021. That's based on the 2013 month-to-month lease that was assigned to him. It then goes on to $9,000 monthly rent from June of 2022 to present. Now, Ali does get credit. He's paid $3,300 per month. But that still leaves back rent of $183,000 to Valen that needs to be addressed either by this court or by remand to the trial court. Well, if the purchase by Valen extinguishes the sublease, how is there an origin due? There's an, well, let me be clear here. There could be a, what I'm talking about the origin due is based upon the time that Valen got the property at the beginning of 2020. He increased the rent going forward. And that hasn't been paid. No, he's now the owner of the property. He's assigned a 30-day termination provision in the 2013 lease. He exercises that and says, Ali, please exit. And I'm going to then, after he doesn't get out, increase the rent to $6,000 rather than $3,300. He's now the owner. He's exercised his right under the 2013 lease to put Ali out. It's my position that Ali's a holdover tenant. Now, when is the question? My client takes the position that he's a holdover tenant since February of 2020. The trial court ruled that it couldn't determine that until it made its ruling in August of 2022. So no later than August of 2022, he's been a holdover tenant. Please remember that the August 9, 2022 order gave Valen, well, it gave Ali a 30-day notice to leave. Valen then amends his eviction complaint, and that's what we proceed to hearing on in November 2022. In my view, he's been a holdover tenant for at least since August of 2022 and probably since February of 2020. So that's double the calculation I just provided. This court has a power to enter that order under Rule 366 to avoid remand if your owners aren't inclined to do it. Justice McKinney, I do want to say that if by chance that 2011 sublease is valid, Frank would take the position that he can still go after Ali for all those years of rent between 2013 and 2019. He didn't pay the right parking. That's on him. That's another reason why privity is important in this case. Any questions or comments? I don't believe so. I appreciate the arguments from the counsel today, and the court will take them out under consideration and issue its ruling in due course. This court stands in recess until tomorrow.